My name is Kay Frank, and I'm here on behalf of Charles Foster, the appellant. Mr. Foster was an employee of the Supreme Court of the State of Washington for approximately nine years and was terminated without notice or due process. He was called into his supervisor's office. The person is the appellee here, and he was terminated and told that he was not eligible for the job. You can either resign in a half an hour, or I will fire you today, and that will be the end of your employment. Mr. Foster believed that he was covered by Supreme Court personnel policies, which had been issued on bank in the year 2000, which promised certain procedural due process prior to discipline and termination. And he asked for that due process, but was told that he was excluded from coverage by those policies because he was a director. Why don't we get right to the heart of the matter here? Why is the office of the administrator of the courts, which was created by statute, different from the state agencies, say like the gambling commission, discussed by the court in Maguire? Well, because the employees are judicial employees. They're clearly considered by the state, by the appellant here, and by the appellees as employees of the judiciary. I think the statute makes it very clear, the statute that created the office of the administrator of the courts, that those employees are going to be responsible to the Supreme Court, that they are supervised by the Supreme Court. I think the Supreme Court certainly acted over the course of the entire time that those employees have been office of administrator of the court employees. They have acted as the employer of those employees, providing them personnel policies, explicitly stating that they manage and direct the office of the administrator of the courts. They assign those employees. They have all the incidents of employment under Washington law that make them the employer. He was a high-level employee. He reported to McQueen. And indeed, she sent him to the Chief Justice, who sort of backed up McQueen. We don't know. Excuse me. Are you? All right. Well, why shouldn't we consider, then, that he was the type of employee to which the handbook would not apply? Because the Supreme Court personnel policies explicitly say who is covered and who is not covered by those policies. And the policies explicitly state who is excluded. And excluded were division directors. And that has a meaning. That term has a meaning. And Mr. Foster was not a division director. He was a high-level employee. But he didn't have staff. He didn't have budget. He acted under the direction of Ms. McQueen. He didn't act on her behalf. And we don't know what Ms. McQueen told the Chief Justice when she went to speak to him. We don't know whether she said, I've given him the 15 days' notice. I've, you know, here are the reasons. I'm going to give him his appeal rights. When he said she could act under her discretion, one can only assume that the Chief Justice was expecting her to act in accordance with the law and with the personnel policies of the Supreme Court. And there's nothing in the record to show anything different than that there was that expectation. Thank you. So the McGuire case is not the case that this Court should be looking at with all due respect to tell us whether Mr. Foster has due process rights. First of all, in McGuire, there was a special statute that appointed Gambling Commission employees. And it was that statute that excluded employees from coverage from RCW 41.06. And one can understand why you wouldn't want Gambling Commission employees to have the same kinds of rights necessarily that other employees do. But that case is very specific about the fact that it deals with an administrative agency and rights given to that administrative agency. And there's nothing about any rights given to or taken from the Washington State Supreme Court about how it can deal with its employees. And, Your Honors, I think that there is no real conflict here. There is no problem with respect to the Supreme Court issuing these policies, because all the Washington State legislature did was say judicial employees are exempt. They're not covered. And we have a question of qualified immunity. Yes. Would you discuss that? Okay. Well, qualified immunity really requires that the person who's making the decision have some reason not to know that the decision they're making is wrong, that it violates the law. And it's very clear that Ms. McQueen, the appellee here, she's a lawyer. She worked for the Supreme Court. She certainly knew the law about due process and protections of the rights of employees. She knew exactly what her personnel policy said. She knew that those policies should be followed for employees. She testified to that. That's in our brief. And she knew that Mr. McQueen was not a division director. And she never said in her testimony that he was a division director. And we explicitly asked, was he a division director? And all she said was he was a high-level person. She knew he wasn't a division director. She knew he should be covered by the policies. She knew that the law of the State of Washington and Federal law give rights to employees who have protections of due process, termination for cause, the right to a hearing. She knew all of that. And if there's any question, if there's any question of fact about, was Mr. Foster covered by the policy, if there's a question of fact, this Court cannot grant her qualified immunity, but must remand this case to, for a trial on the question of fact. You can't have qualified immunity where there are questions of fact that you can't have. Breyer, this is such a broad doctrine that it protects the – it's a broad doctrine that protects, I think the phrase we've used is, all but the incompetent are those who knowingly violate the law. And here you have a situation in which it's somewhat unique because the judiciary isn't covered by the civil service rules. The judiciary has a handbook. That's – it's not clear to me that there's clearly established law here that an objective court employee would know that he or she was violating. Well, she stated that she knew in answers to admissions that she had to follow the personnel policies and provide these due process protections to the court employees. So she admitted that those protections were required. What she doesn't admit is that those policies applied to Mr. Foster. So that's really the crux of her slightly different than that. I recognize that. But the question of whether or not there's a constitutional violation as opposed to a violation of the policy is quite different. And the constitutional violation only arises if those – the manual gives rise to a property interest. Right. She had no reason to not understand that those – those policies give rise to a property interest. There – I cited a lot of law in my opening brief, I think on page 15, about all the different ways that public employees can get property rights and employment. And one of those ways is through a handbook. And there's never been an argument that that is incorrect. So I guess your question may be, well, does a Supreme Court employee – can a Supreme Court employee get a property right from a handbook? But any public employee can get a right – property right from a handbook. And there's no exclusion that says, well, gee, you know, city or And the district court didn't reach qualified immunity. No. The district court held exclusively on the issue of whether these – whether the Supreme Court had the authority to issue binding personnel policies. And its conclusion was the Supreme Court did not because RCW 41.06 set – excluded them from coverage. And I just have to say – One question that's on the order, and it's a bit off topic, but I wanted to make sure it's addressed. The order is dismissed without prejudice. Why was that? Well, because there was a claim pending, and the court dismissed the federal claims but left the state court claim pending.  Yes. In the suit? There is – actually, there's another suit. There's a First Amendment claim that was filed that has now been stayed pending the outcome of this case. I think – I think the question – The question I have is we have to make sure this is a final order. Typically, without prejudice, it is not, unless it's clear that the intent was to terminate the litigation. I believe, Your Honor, that the question – Particularly if there's leave to amend. Now, here there's no leave to amend, and that's why – that's the reason for my question. I believe that the court retained the question about whether there could be a claim based on handbook. That was not a constitutional claim. And so the – the – So there – is this case still open in the district court? I believe it is. No, it's not, actually. It was dismissed without prejudice. So it is not still open, but can – that claim could be re-filed. You're confusing me, I'm afraid. What – you keep referring to these other claims and the court was retaining this and that. I don't know what you mean. I'm sorry. I know this question comes out of the blue, so there's no need to apologize. The court dismissed the entire case, but it dismissed it without prejudice, I believe, because there were State law claims that were brought that the court never ruled on because this – it dismissed – it was able to dismiss the entire claim on the basis that there was no binding personnel policy. Well, were these State law claims in this case – were they sitting in the complaint in this case? Yes. So the – but the judge never ruled on them? That's correct. But dismissed them? Yes. Without prejudice? Correct. To re-file in State court? I guess. Yes. I believe so. Were they re-filed in State court? No. The claim that was re-filed in the State court – and I apologize, Your Honor, it's been three years now – was a First Amendment claim that these actions violated my client's First Amendment rights. Well – So you have this pending State court case that's ongoing? No. It was actually removed to Federal court and State pending the outcome of this case. Okay. So it was filed in State court, then removed in Federal court? Yes. That's correct. All right. But this case was not originally filed in State court. No. This case was originally filed in State court. So that's why the judge couldn't remand the State claims to State court. He just dismissed them without prejudice. That's correct. So the case in Federal court – this case in Federal court is over. That's correct. Yes. It is over. This case in Federal court is over. All right. I'd like to, if there are no further questions, preserve the rest of my time for a rebuttal. Sure. Thank you. May it please the Court. I'm Senior Assistant Attorney General Mike Tardif. I'm here representing Ms. McQueen. And with me at counsel table is my co-counsel. That's not Ms. McQueen there. That's Ms. Bashaw, who's co-counsel on the case. Mr. Foster was hired by Ms. McQueen in 1993 with the approval of the Chief Justice of the State Supreme Court. Basically, his position was Director of Intergovernmental Relations.  The hiring was done by Ms. McQueen personally at her discretion. There was no – Mr. Foster was not in State civil service. He has no contract of employment. In 2000, Ms. McQueen became somewhat unhappy with some aspects of the employment and discussed it with the Chief Justice and then made a decision that she would ask Mr. Foster to resign. May I ask you a quick question? Certainly. I think we understand the facts. Is there any dispute from your perspective that his position is not specifically listed in the handbook as being one of those exempted positions? Specifically listed now, that was the question I asked. Well, the Director, it's difficult to answer it in quite that fashion. I think a yes or no and then there will be a follow-up question is probably a way to start. Director is not listed in the handbook. Okay, so your position is that his position is not specifically listed, but that by implication it's listed because of the nature of his responsibilities. Yes, that was in part Ms. McQueen's position. That's ultimately not the basis on which the district court dismissed the case or resolved the matter. But, yes, as a matter of fact, in the case that was Ms. McQueen's position, that he was a director, paid the same salary as the division directors, and the intent of her and the court was to have him equal with the so-called division directors. Did anybody ever tell him that when he retired? It was never an issue until the events leading to this lawsuit. So the answer is no. The answer is no. So he picked up his handbook at the time he was hired, which I assume he was given. Yes, Your Honor. Okay. And he read it. It would not specifically include his position. As far as the listing of positions excluded. Wouldn't include it. Correct. So would he be unreasonable to assume that he was included within the protections of the handbook at that point? No, Your Honor. It would not be reasonable to make that assumption because basically the position he was given, actually what happened, and I'm not sure if all of this is in the record, but you're asking the question so I feel obligated to respond. Well, the handbook's in the record. The handbook's in the record. At the time the handbook was written, 1990, there were only division director positions. When Mr. Foster came on board in 93, there was a need to elevate him his salary, and so I believe he asked to be made equal to the division directors in terms of salary and level. But they didn't call him a division director. They didn't give him that title. No, because as the chief of lobbies, he didn't actually have his own staff. He didn't actually head up. Isn't that a legitimate distinction between a division director and his position? In Ms. McQueen's view, she did not think it was a legitimate distinction. I'm not talking about Ms. McQueen's view. That's in her own head. I'm talking about when he gets hired, he is given a particular position. His position is not covered by the handbook. He gets the handbook. Isn't he within the parameters of reason to assume that he is therefore covered? And you say no, but then you say because it's in Ms. McQueen's head that he's not covered. Well, he's not in Ms. McQueen's head. He's in his own head. I understand, Your Honor. I hope. Unless he's out of his mind. And I don't think he'd be out of his mind to assume that he was not covered because it doesn't say so. Let me point out one other thing. There's also other provisions in the handbook, and I believe they were put into the record, which allow Ms. McQueen to make the determination as to what level people are at within the office and organizationally how they fit in. That's why I asked you. Did she ever tell him that he was covered? To my knowledge, there was no discussion on this point prior to the events leading to his resignation. But ex post facto, she's in a position to kind of change the handbook, so to speak? Well, I guess I can't agree with that, Your Honor. The thing I don't want to get stuck in is trying to. But I would like to say I don't think that that issue is really material here, because that's not the basis in which this case was adjudicated by the district court. But before we leave it, I gather your position is because he was put on the same level as the other exempt employees, he should have assumed he was going to be exempt. And the other side's position is the plain language doesn't apply to him, and so he could have reasonably assumed the office. Is that where we are on this? Actually, Your Honor, our more fundamental position is that he is exempt because state law, state statute. We're still on the manual, though. Yeah, we'll get to your next argument. Don't worry. So is that a fair characterization of where we are? Your position is he should have assumed that he was exempt because other similar employees were exempt and the manual was created before his position was created. That's your best argument. Yeah, I believe that. Your argument is the plain language doesn't apply and, therefore, he was reasonable enough. Is that where we are on that? Yes, I believe that's fair. Now, go ahead. Now, the basis in which the district court dismissed the case was that there was no property right under state law, and that is, of course, a fundamental requirement for the due process claim. Under Washington law, it's a longstanding law in Washington that public employment is a creature of statute, and there are no rights for public employees unless they are created by statute. And, basically, the state has a very comprehensive civil service law. All positions in the judiciary are excluded from that law. So basically the district court found that the Washington Supreme Court did not have the authority to promulgate the regulations or the manual that it did and give it that kind of status. Yes. The McGuire case, which has been previously referred to by counsel and possibly the court, it indicates, among other cases, that agencies of the state of Washington do not have power, the power to grant rights to employees beyond statute. Is the Supreme Court, is the judiciary in Washington an agency of the state government? Or is it a co-equal branch of government? It's a co-equal branch, the court itself. Okay. I'm just curious here, being a judge myself. Does the Supreme Court ascribe to your argument that they don't have the authority to promulgate their own rules? No, and ultimately that's what this case came down to. You seem to be arguing something that is not necessarily in the interest of the Washington State judiciary in an argument that I would think the Supreme Court might take some umbrage with. Despite the fact that you're arguing? Yeah. It seems to me like you're arguing against the interest of your client. I mean, I would think that maybe I'm missing the boat here. I don't know. Well, my argument has been reviewed with proper authorities. So I don't think my argument is overbearing. So hopefully I won't be so informed. Well, who is that? Is that the Supreme Court or is that the governor? That would be the court and the administrator of the courts, Your Honor. It does leap off the page here. I mean, saying the court is not persuaded the Supreme Court has the right to grant employment rights beyond those granted in the civil service statute. That statement alone has enormous implications for a whole host of courts. And so we are in this anomalous situation, as Judge Ezra has hit on the ad, I think, of saying, okay, we're going to hold for you by finding that you have no rights other than an agency. You have no independence as a judiciary over your employees. And I must say, that is a startling notion. I believe the district court's language is a little bit stronger than what we actually argued in the court. And I can explain that. It's not our position that the Washington Supreme Court would not ultimately have power as a separate branch of government to override legislation if it saw it, saw the need to do that in the exercise of its inherent authority. Our position is that the court has not done that in this case. Well, but my concern here is that if the Washington Supreme Court, if the judiciary is, as you say, and I agree with you that it is, a co-equal branch of government with some degree of independence, couldn't the state legislature effectively cripple the judiciary by simply starving it off with legislation that precluded it from running its own house? I mean, you'd have judges sitting there with no employees. I mean, it just doesn't equate. Now, to a certain degree, that's what the, I'll have to admit to you, to a certain degree, that's what's happening to the federal judiciary at the moment. But it appears. Heightened interest. No, our court takes a position, and the cases are cited in our brief, that ultimately if the legislative branch did attempt to starve the court of funding, did attempt to remove all its support, the court, as a matter of principle, has said generically, yes, it would have the right to step in. Well, what about this? Let's say the legislature stepped in and granted all of the court employees property rights that the court didn't want to give them. Well, I mean, actually, one of the cases that deals with that, not actually with the state directly, but one of the cases in the briefing is the State Bar Association case where the court adopted a rule. There was a dispute as to whether or not the bar staff should be unionized. The Supreme Court adopted a rule saying that it was within the discretion of the Board of Governors or the Bar Association to make that decision. And in Washington State, the Bar Association is effectively like a branch of the Supreme Court, at least for these purposes. The legislature, after the court adopted a rule on that subject, then passed legislation effectively repealing the court rule. And that's one of the two cases I found where the Supreme Court came in and said, well, we've adopted a rule on this. We have spoken as a matter of separation of powers. The legislature can't contravene us. That has not happened with the cases that have been before the court. But that's exactly what I'm saying. The Supreme Court of Washington asserted its independence. It did in that case. But now you're saying they're not independent. You're saying that, in fact, they have no authority to issue or promulgate rules that govern their own core employees, even at the highest level. No. Your Honor, respectfully, I'm not saying that, and I didn't intend to say that. As I've indicated previously, I think the district court used some fairly strong language, and a little stronger than what I argued to the district or my co-counsel argued to the district court. But what I'm saying is there have been, I think, six cases in the last 30 years that have gone before the State Supreme Court or State Court of Appeals on the issue of whether or not legislative regulation of judicial employment was violating separation of powers. In every single case, the court has deferred to the legislation governing judicial employment, without exception. There are no cases where the court has not deferred. It's one thing to defer. It's another thing to say you don't have the power. And we've been, I guess, chatting about it amingly, but this does have some potentially serious collateral effects that I think we would be very careful. And I'm not asking this court to use the same language the district court did. The district court said this. He doubted that the Supreme Court had the right to grant employment rights beyond those granted in the civil service statute. If we disagree with that statement, or at least don't want to, or we don't want to reach that statement. It's a little sparse. You seem to be arguing that they have the right, but they didn't exercise in this case. So tell me what, why you believe that. That's correct. Basically, plaintiffs are saying, the plaintiff is saying here simply because the court adopted these personnel policies, which have actually subsequently been repealed, that then that adoption automatically overrides the statute. And my argument is, no, it doesn't. The court did not say there's an introduction to these rules. It did not say that we're adopting these as part of our inherent power to override legislation making our, you know, employees exempt from civil service. And there's no testimony in this record that the court had that intent. Plaintiff is simply assuming because the court adopted these rules that it intended to override the legislation exempting all judicial employees from civil service. Basically, it's our position the court simply adopted some, as many organizations do, private and public, simply adopted some internal rules for the management's affairs. It wasn't attempting to create rights in the employees. For instance, in the private context, when an employer adopts a personnel manual under Washington law, if the employer disclaims creation of any rights in the employees, then that is just a management or administrative manual for the employer, and it does not form a basis for claims by the employees in court. And basically, that's what the Supreme Court did here. It's our position. There's no property right. There's no property right. That's correct, Your Honor. Well, can I ask you a question? Assume that the employee manual does apply to Mr. Foster. Are you disputing the fact that the manual was not followed in terms of his due process rights? Well... Is there any question? If we assume, I realize that you don't assume that, but if we assume that the manual does apply to him and that he has a property right, you can take out that second part. The manual was not followed in terms of his due process rights. If you read the manual as requiring a forecaused termination, Your Honor, that would be correct. The manual would not have been followed. Although, oddly, the manual, unlike state civil service law, there was no procedures for hearings or any kind of follow-up. If there was a, for, if you make the assumption that the Supreme Court was attempting to create a mini civil service system within the court, they certainly didn't provide any hearing procedures or any way to adjudicate dismissals for cause. I wouldn't get into criticizing your client's drafting. So if you look at... You're already probably persona non grata over there as a result of this argument. I'm kidding you, of course. No, no. Believe me. I think Judge Byrd is... So, again, I don't believe I'm hearing old prairies. I'm kidding you, of course. I understand, Your Honor. At one point, we submitted, which I think is relevant to the points the Court's raising, we submitted some supplemental authority, which I hope got to the Court. There's been a very recent case, actually, on this very subject. It's, I think, County and City Employees v. Hahn. And Hahn was a Superior Court judge, I believe, in Yakima County, Washington. The Superior Court judge is in Yakima County, and I believe the District Court judges took the position that General Rule 29 of the state Supreme Court, saying that the courts of the state have the obligation to supervise and manage their own staff, prevented the court from collectively bargaining with its employees, and the Yakima Court refused to collectively bargain. That just went to the Supreme Court last spring, and the Supreme Court said no. And it was argued as a separation of powers issue, because the court had a rule. They relied on the Bar Association case, and the Supreme Court rejected that, said no. You know, you are bound by the statutes requiring collective bargaining, and you are to supervise your employees within the context of the contract you negotiate pursuant to these statutes. That's what our rule means, and so we're harmonizing it. And that's kind of what I'm suggesting here, Your Honor. The Supreme Court adopted, can adopt procedures for the orderly administration. The administrative court has almost 200 employees, and the Supreme Court probably has 40 or 50. Yes. If they get to a size, they need some procedures. That doesn't necessarily mean that in adopting those procedures, they're attempting to repeal state law. If it didn't, does the Supreme Court adopt a rule that, as you just said, harmonized with the state statute? Well, if you interpret these personnel policies as plaintiff argues, in effect the Supreme Court was repealing the state statute exempting all the court employees from civil service, because basically state civil service, there's a number of provisions, but one of the major ones, of course, is dismissal for cause only. That was one of the foundational principles of civil service, as opposed to patronage or the older systems. So basically plaintiff is saying that by adopting it, and the introduction, it makes these are general rules to be followed in personnel matters. If you look at the actual introduction, which is in the record, it's very kind of bland and generic. There's no indication in there that the court was attempting to change 40 years of state civil service law. No, but it also didn't contain a disclaimer. That's correct, but, Your Honor, the position would be that in view of the state law and in view of the fact that the court has always in the past deferred in every separation of powers case to state statute in terms of employment of court employees, it always says in proper case it could step in, but it never has. And so... You can still harmonize the state civil service law with the court manual. I mean, there is nothing... My harmonization, Your Honor, would be that the court is free, like any well-run organization, to adopt procedures and policies to manage its employees. But just because it does that internally, just like a private employer with a disclaimer in their manual, it's free to use those, but ultimately it doesn't create legal rights when state statutory law says that they are exempt from the civil service system. Now, if the court ever in its wisdom saw the exemption from civil service as a conflict and needed to exercise its inherent authority, presumably the court would do that. But it hasn't done so in this case. Thank you for your argument. I will also point out, just if I may, that there are two other grounds, qualified immunity and the voluntariness of the resignation, which would also be a basis to affirm the decision. How do we reach those if the district court didn't? I believe we cited a Ninth Circuit case in our briefs, Swenson v. Postal Service, which the circuit indicated that if there were other grounds that were argued and briefed in the district court, and they can be affirmed, or it can be affirmed on that basis. That is true. I think qualified immunity is one of those areas. I think we've been kind of reluctant to make it. Washington, of course, actually applies the same rule. If you're up on appeal, if it was raised in a summary judgment, a legal matter can be dealt with by the appellate court. Thank you very much. Counsel? A couple of points. First of all, regarding the personnel policy that is in the record that we provided to the court, and it starts at page 29, and there is, as you noted, Your Honor, no disclaimer. It is our position that the Supreme Court stepped into a vacuum when the state legislature exempted those employees from coverage, from the protection that every other state employee had. It's our position that it did so because it would have created a great brouhaha for the state legislature to impose that kind of restriction and stricture on judicial employees, and therefore it chose to leave it blank, and then the Supreme Court, acknowledging that many other employees in the state had these kinds of protections, gave its employees those protections in this policy. How do you explain the recent Supreme Court, Washington Supreme Court case cited by counsel? Well, Your Honor, all the cases cited by counsel are cases that impose obligations on the court, not cases that tell the court, you know, it doesn't have to do anything. And the most recent case is very explicit in stating, first of all, it's a case about declaratory judgment, and should the Supreme Court issue a declaratory judgment. And the court said, no, we don't have to do that because there are other remedies at law to address whether these regulations should be applied. But the most important part of the case from our perspective is that the Supreme Court recognizes that the courts have the ultimate authority over the management of their employees, and over PERC, the Washington State Public Employee Rights Commission rulings, and that in the end, any decision that is made that might be in any way adverse to the district court is going to be reviewed by the courts. And so that's why this case really is not dispositive of the case in front of this court, because it just reemphasizes the integrity of the court, the need for independence, and says that is protected by the fact that there's judicial review. Well, this whole case is paradoxical, because if we buy your argument that the court has the independent right to, independent of the legislature to grant employment rights, that is, that's an issue of judicial independence. On the other hand, the solution, then, is to say, and by you didn't intend to grant property interests, but you did so, and therefore, we're going to pose a whole new set of requirements on the court, which is, in a sense, an infringement on their judicial independence as well. It would be a lot clearer, for example, if the Supreme Court had just promulgated a rule that said one way or the other what they were doing. But here we are trying to read the tea leaves of what they were trying to do. Well. Isn't your position, in a sense, an attack on judicial independence as well? Not really. I mean, the court made some decisions. And I'm going to go outside the record here a little bit, but the court changes in its membership, and the membership at that time intended to give employees protections. After this lawsuit was filed, and with a different member of the different number of judges on that court, it withdrew the policies. They're no longer bound. They decided they didn't want to give those protections. Well, it seems to me that once the court decides to give protections, it is bound, and then it can change its mind, as it did. And so you're not imposing anything on the court by saying at the time you made these commitments to your employees, they were commitments that you had to keep. And now you've changed your mind. You don't want to make those commitments to your employees anymore. You don't have to. There are a couple of things about the policies. Number one, those policies were reviewed a number of times between 2000 and the date we filed this lawsuit. And there's evidence in the record that Ms. McQueen was involved in those reviews, and they were never modified to include Mr. Foster. Number two, Mr. Foster was handed the policies at the time he was employed. There is an implicit understanding, if you're given policies, that when you become an employee, that you're covered by those. And at that time, the court wanted to cover these people and wanted to give them the protections that the legislature was unable or unwilling to give them, but didn't deny them. You don't need to read 4160 exemption as a denial of rights. The cases don't say that exclusion from 4160 is a denial. It's a vacuum. The court stepped into the vacuum to give its employees those rights. I think the counsel's statement about all the other cases and how the courts always deferred to the legislature, those are all cases in which the court has imposed collective bargaining, essentially, on courts, where the legislature has imposed collective bargaining on courts. And in every one of those cases, there's a reiteration of the right of the court to manage its own employees, and it only allows those collective bargaining rights to the extent that it does not impinge on those rights. That's where the harmonization comes in. Here, there is almost isn't even a need to harmonize, because there's no prohibition. There's no, it just says we're not going to, you know, we're not giving these rights. But it doesn't say you can't give these rights. There's nothing in the legislation that prohibits the Supreme Court, an independent branch of government, from giving rights to its employees. And the word of the Supreme Court, these are not policies written and adopted by the office of the administrator of the courts. They're not internal administrative. The Supreme Court is a State of Washington meeting on bank, sitting all nine judges, and saying, we want to give these rights to our employees. And they've changed their minds. They're entitled to change their minds. But, you know, during the time that they gave those rights, the employees were entitled to rely on them, and there are procedures for due process, rights of notice, hearing, and appeal, all of which were not given to Mr. Foster. Thank you, counsel. Let me ask both counsel this. This case, although it's factually rather easy in one sense, it presents a lot of complex problems. Is there a possibility that you would be willing to consider the assistance of the circuit mediator trying to resolve this particular dispute? You don't need to tell me where you've been on settlement or where it is, and your answer will not affect us in one way or another. So this isn't one of those sorts of tasks. There is a process, and there always are some discussions, although there were not a lot of discussions in this case, Your Honor. And I could not, I don't have authority to speak to that point here. I did on the other matters in the argument, but I don't have authority. Well, I have authority, and my counsel is always willing to have further discussions. All right. Can I just say something about the authority issue, Your Honor? I did have a little concern about counsel talking about the fact that his argument has been approved by other than counsel. That's right. It's oral argument, and our questions have led you both to go slightly outside the record. We understand that neither of you intended to do that. You responded to our questions honestly. We understand this, and we also understand the situation, and it's an interesting case. So thank you very much, both of you, for your very good presentations and good briefing. May I ask one further question? With regard to this issue, is there some step that we should be taking with regard to the mediation issue? Well, we will discuss this in chambers and decide whether or not it's appropriate to request you, if you're willing to participate in that. The normal process would be we give you a certain amount of time to let us know whether or not you wish to entertain, go to mediation, allow you to consult with your clients. Because if you really seriously do not want to do it, then there really isn't a point.  But it just occurred to me as I was sitting here that this might be one of those cases that might be appropriate for that kind of mediation. And then we would give you a certain period of time to respond. If we didn't hear the response, we would go ahead and decide the case. But we may or may not think it's appropriate. We haven't talked yet. I'm just raising the issue. Thank you, Your Honor. Thank you, both of you. The case you just heard will be submitted, and we'll be in the adjournment. All rise. This court will discuss and stand adjourned. Thank you.
judges: D Nelson, Thomas, Ezra